UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| SEAN LAMONT DUDLEY, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 0: 21-046-WOB |
| | ) | |
| V. | ) | |
| | ) | |
| H. ALLEN BEARD, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondents. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Sean Lamont Dudley is a federal prisoner currently confined at the Federal Correctional Institution ("FCI")–Ashland in Ashland, Kentucky. Proceeding without an attorney, Dudley has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [R. 1] Dudley has both paid the $5.00 filing fee as required by 28 U.S.C. § 1914 and filed a motion for leave to proceed *in forma pauperis*. [R. 7, 8] Because Dudley has paid the filing fee, his motion to proceed *in forma pauperis* will be denied as moot.

This matter is now before the Court to conduct the initial screening required by 28 U.S.C. § 2243. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). Dudley's § 2241 petition will be dismissed on initial screening because it seeks relief that is unavailable in a § 2241 proceeding.

In July 1997, pursuant to a plea agreement with the United States, Dudley pled guilty in the United States District Court for the Western District of North Carolina to one count of

-1-

conspiracy to possess with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 846 (Count 1s) and one count of possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count 2s). In March 1998, Dudley was sentenced to a term of imprisonment of 360 months on both counts, plus eight years of supervised release on both counts. *United States v. Sean Lamont Dudley*, No. 5:97-cr-001-KDB-1 (W.D. N.C. 1997).

Since April 2020, Dudley has filed multiple motions for compassionate release under 18 U.S.C. § 3582 and motions to reduce his sentence pursuant to the First Step Act of 2018 in the Court that sentenced him, all seeking relief from his sentence and/or compassionate release in light of the COVID-19 pandemic. *Id*. at R. 205, 206, 208, 210, 211, 212, 214, 216, 217. In response to his most recent motion, the United States notified the sentencing court that Dudley is fully vaccinated against COVID-19, having received his second dose of the Pfizer vaccine on or around May 11, 2021. *Id*. at R. 221. The Court then denied Dudley's motion for compassionate release on June 11, 2021, concluding that "[t]he vaccine addresses [Dudley's] concerns about contracting COVID-19 and his purported risk of severe illness should he contract the virus." *Id*. at R. 222.

Dudley also filed the pending § 2241 habeas petition in this Court. While his petition is a bit disjointed and hard to follow, the gist of his claim challenges the failure of the Bureau of Prisons ("BOP") to transfer him to home confinement. Dudley claims that, at some point in 2020, he filed a BP-9[1] with the former Warden at FCI-Ashland requesting both a transfer to home confinement

---

[1] The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. If a matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form (BP-9 Form) with the Warden, who has 20 days to respond. *See* 28 C.F.R. §§ 542.14(a) and 542.18. If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. *See also* BOP Program Statement 1330.18 (Jan. 6, 2014).

pursuant to § 12003(b)(2) of the CARES Act and compassionate release pursuant to the First Step Act of 2018 due to the "emergency conditions created by COVID-19." [R. 1-1 at p. 2]

Dudley then claims that, in September 2020 (but before he filed a BP-10 to appeal to the Regional Director), he was informed by Case Manager Don Cornwell that the BOP determined that he was an appropriate candidate for release to home confinement pursuant to the CARES Act and that his name had been provided to the Unit Team for a final determination as to whether he met all of the eligibility requirements. Dudley states that he signed the appropriate paperwork to begin the process, but, because of a sense of wariness, continued the administrative appeal process with respect to the denial of his request for relief pursuant to the CARES Act and First Step Act. [*Id*.]

Dudley then alleges that, in October 2020, Cornwell notified him that, although his home confinement plan had been approved, the United States Probation Office had denied his request, stating that "due to limited resources, our office is not in the position to provide home confinement services for the defendant at this time, given his release date of June 3, 2024." [*Id*. at p. 3 (quoting Oct. 1, 2020 letter from J. Brock Knight)] Dudley states that, since there had not yet been a response to his BP-10, he "apprised the Regional Director of the change of events and circumstances." [*Id*.] However, the Director did not respond within the required time period.

Dudley claims that, unbeknownst to him, "the process employed/instituted by Mr. Cornwell was not the desired procedure to implement to achieve the goals of both the Attorney General and the BOP." [*Id*.] He states that, in December 2020, Unit Team staff informed him that the process that they instituted to achieve the goals of the CARES Act was through a request for relocation of supervision, because the judicial district to which he could be potentially released for supervision was not the district of his original sentencing. Dudley claims that this process

implemented by Cornwell does not strictly adhere to the guidance given in an April 3, 2020 Memorandum issued by former United States Attorney General William Barr, which Dudley claims requires transfer to home confinement, even if Probation cannot provide electronic monitoring. [*Id*. at p. 4-6] According to Dudley, if he was a candidate for transfer to home confinement, the April 3 Memorandum required the BOP to transfer him, notwithstanding the unavailability of electronic monitoring. [*Id*. at p. 6]

However, Dudley's § 2241 petition must be dismissed on initial screening, as it is plain from his petition that he is not entitled to relief. For clarification, although the focus of the administrative grievance documentation submitted by Dudley appears to be his request for compassionate release pursuant to the First Step Act, his § 2241 petition relates to his request for release to home confinement pursuant to the CARES Act. [*See, e.g.*, R. 1 at p. 1 (stating that his § 2241 petition concerns "issues concerning defendants failure to adhere to Attorney General's direct orders relating to CARES Act relief as ordered by the Bureau of Prisons")][2] Indeed, a motion for compassionate release, which is a motion for modification of a sentence pursuant to 18 U.S.C. § 3582, must be made to the Court that sentenced Dudley, and may not be filed in this Court. *See* 18 U.S.C. § 3582(c) (providing the limited circumstances under which the court that imposed a sentence may modify that sentence). *See Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) ("[A]lthough the [Bureau of Prisons] has the ability to recommend compassionate

---

[2] For this reason, it is doubtful that Dudley properly exhausted his administrative remedies with respect to his claim raised in his § 2241 petition. It has long been the rule that, before a prisoner may seek habeas relief under § 2241, he must first exhaust his administrative remedies within the BOP. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006). *See also Leslie v. United States*, 89 Fed. Appx. 960, 961(6th Cir. 2004) ("[I]t is well established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241."). According to Dudley's own allegations, the BOP did not deny his request for transfer to home confinement until October 2020, at least a month after he began the administrative grievance process.

release, only the sentencing court is authorized to reduce a term of imprisonment." *See Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020)). Thus, Dudley could not pursue a request for compassionate release in this Court.

Nor may he pursue his claim that his request to be released to home confinement was wrongfully denied. Dudley states that his request to be released to home confinement was made pursuant to the CARES Act, which was enacted on March 27, 2020, and includes a provision that temporarily expands the length of the maximum amount of time for which the Attorney General is authorized to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2). *See* CARES Act, § 12003(b)(2) (enacted Mar. 27, 2020).

On March 26, 2020, the Attorney General of the United States issued a Memorandum regarding prioritizing home confinement of current federal inmates where appropriate in response to the ongoing COVID-19 pandemic. *See* March 26, 2020 Memorandum from the Attorney General to the Director of BOP regarding "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf. In this Memorandum, the Attorney General directs the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." *Id*. The Memorandum then sets forth a non-exhaustive list of discretionary factors to be considered in assessing which inmates should be granted home confinement. *Id*. Thus, while encouraging the utilization of home confinement as an alternative, the Memorandum clearly leaves the determination of whether home confinement is appropriate to the discretion of the BOP.

On April 3, 2020, the Attorney General issued a second Memorandum, specifically intended to encourage the use of home confinement for inmates at institutions most affected by COVID-19. *See* April 3, 2020 Memorandum from the Attorney General for the Director of BOP regarding "Increasing Use of Home Confinement at institutions Most Affected by COVID-19," available at https://www.justice.gov/file/1266661/download. Although Dudley claims that he is entitled to relief pursuant to the directives of this Memorandum, the April 3 Memorandum specifies that it was issued in response to the "significant levels of infection" then existing at several of the BOP's facilities, including FCI-Oakdale, FCI-Danbury, and FCI-Elkton. *Id*. Accordingly, it instructed the Director of the BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." *Id*. The facility in which Dudley is confined (FCI-Ashland) is not included in this list. Nor does Dudley allege that FCI-Ashland has, at any relevant time, been "similarly situated" to those facilities with significant levels of infection as of April 2020.

Moreover, contrary to Dudley's characterization of the April 3 Memorandum, the Attorney General does *not* direct that the BOP is required to transfer all inmates who qualify to home confinement, regardless of whether electronic monitoring is available. Rather, the BOP must first identify "suitable candidates" for home confinement. The Memorandum then explains:

> I also recognize that BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large numbers of inmates in the community. I therefore authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, *so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety.*

*Id*. at p. 2. The Memorandum further recognizes that, in addition to the obligation to protect people in BOP custody, the Department of Justice and the BOP "also have an obligation to protect the

public." *Id*. In light of this obligation, the Memorandum advises that "while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate is unique and each requires the same individualized determinations we have always made in this context." *Id*. at p. 3.

Thus, the BOP's determination in Dudley's case that he would not be released to home confinement because electronic monitoring was unavailable is entirely consistent with the directives of the April 3 Memorandum, which repeatedly emphasized that the BOP retains discretion with respect to home confinement transfer decisions. Even so, an agency's failure to strictly comply with its own policies does not violate due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause."). Thus, Dudley cannot seek habeas relief based on his claim that the BOP did not strictly comply with the directives of the Memorandum when it denied his request for a transfer to home confinement.

More critically, while 18 U.S.C. § 3624(c) (even as expanded under the CARES Act) authorizes that BOP to *consider* placing an inmate in home confinement, a prisoner is not automatically entitled, or guaranteed, such placement for any amount of time. 18 U.S.C. § 3624(c); CARES Act, § 12003(b)(2) (enacted Mar. 27, 2020). *See also Heard v. Quintana*, 184 F.Supp. 3d 515, 520 (E.D. Ky. 2016). *See also Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009); *Boals v. Quintana*, No. 5:15-cv-335-JMH, 2015 WL 8665404, at *2 (E.D. Ky. Dec. 11, 2015). Rather, "the decision to place an inmate in pre-release community confinement and/or home confinement is discretionary and will be 'determined on an individual basis' according to

the factors in 18 U.S.C. § 3621(b)." *Boals*, 2015 WL 8665404 at *2 (citing *McIntosh v. Hickey*, No. 10-cv-126-JMH, 2010 WL 1959308, at *3 (E.D. Ky. May 17, 2010)).

The BOP's placement decisions, including determinations regarding home confinement, are expressly insulated from judicial review, as the provisions of the Administrative Procedures Act ("APA") do not apply to such decisions. 28 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."). Cf. *Woodard v. Quintana*, No. 5:15-cv-307-KKC, 2015 WL 7185478, at *5-6 (E.D. Ky. Nov. 13, 2015). Thus, Dudley may not pursue his claim that the BOP wrongfully denied his request for release to home confinement as set forth in his § 2241 petition.

For all of these reasons, Dudley is not entitled to habeas relief based on his § 2241 petition and his § 2241 petition will be denied.

Accordingly, it is **ORDERED** as follows:

1. Dudley's motion to proceed *in forma pauperis* [R. 8] is **DENIED AS MOOT**.

2. Dudley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED WITH PREJUDICE**.

3. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

4. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This 21st day of June, 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge